Cloud Farm Associates v. Volkswagen Group of America Ready? Mr. Killeher. May it please the court. This case, of course, involves a set of inventions that make a car ride more calm. It prevents tilt as going around a curve. It can alleviate the shock of going over a bump in the road. There's four claim construction issues that are really the basis of the stipulation of non-infringement and invalidity. And the primary crux of the problem is exemplified by the fact that the district court construed the word prevent flow as to mean exactly the same thing as prevent any flow. And you have two different independent claims in the oldest patent. Claim 1 says it's for limiting tilt, and it prevents flow. Claim 16 doesn't say it's just for limiting tilt, and it says prevent any flow. And it's that difference that is exemplified by the scope of all the inventions that are really disclosed in the specifications. So this argument is like a statutory construction argument, the use of prevent flow, and then which we think means prevent what it says, prevent flow, stop flow. But you're suggesting that because in another claim they use prevent any flow, then that forces us to construe prevent flow as being to prevent some flow? Yes, Your Honor. For example, if it prevented 90% of the fluid from flowing, it would have prevented flow. But it wouldn't be, for example, a hermetic seal preventing any flow. And that's the difference in the structure of the claims. And there's plenty of support in the four specifications for this idea. So you want us to construe prevent flow in claim 1 as prevent some flow. I think hinder is the word we use, Your Honor. But in essence, yes, prevent some is what it would cover. And the words that they use is any flow, prevent any flow. In claim 16, Your Honor. Right. But not in claim 1, where it says limit. Prevent some is definite? Yes, Your Honor, I think it is. Like how much? There would have to be obstruction of the tilting as well, Your Honor, for the preventing of the flow limitation to be met. Well, I would think prevent some flow would be prevent from a tiny little bit to a whole lot. And how does the public know where that line is drawn? It's going to depend, Your Honor, on the facts of what driving is like. When you go around a turn that maybe is just 1% or 1 degree, you really don't need this functionality. But when you start getting into more extreme turns to URNS, that's when you need this functionality. And that's where it'll be definite that the claims are being practiced. I don't understand your answer. How could, I mean, you used all kinds of adjectives to describe extreme or whatever. These are all mushy words that, in my view, would create a problem for you on an indefiniteness evaluation, right? I mean, because how is the public supposed to know the parameters of what you're saying? Your Honor, I would say we look to the specification to help alleviate any concerns. So what is it? I mean, I think there are places you would agree that in the specification they talk substantially about stopping all flow, right? Yes. And so you come up with one portion of the specification that seems to suggest that there could be some flow, right? Yes, Your Honor. And that portion deals with the absorption of the shock. It does. It's a combination of a tilt controller and a shock absorber, both of which are similar in that what they do, what they both do is they prevent or hinder or eliminate. But it seems to me that the asserted claims and the accused claims only involve tilt control. And the difference of language that you're citing is for shock absorption. Your Honor, the full scope of the claims, I think, includes combinations of tilt controllers and shock absorbers, both of which inhibit the movement of one structure in the car toward another structure of the car. The claim was in, maybe, and I would agree with that. But the usage of the words prevent any flow, and the words just prevent, they're used in different parts of the claim. Yes, and in different claims. And in different functions. That is correct, Your Honor. And I think the different functions is one eliminates and the other hinders. So there are numerous passages in the specifications of the four patents. In the specifications, how does claim differentiation apply here? I don't think the doctrine of claim differentiation really applies here, Your Honor. We're not talking about one independent claim and a dependent claim where we're trying to say that the limitation of the dependent should be read into the independent. We have two different independent claims, and we're talking about the fact that different language is used in the two, and its differences in degree and emphasis. And we're saying that that's one of the canons of claim construction, that the use of different words means different scope applies. So that's a little bit different from the doctrine of claim differentiation. There are plenty of passages in the four specifications, Your Honors, using words like resistance, cushioning, dampening, partially restrain, flow at a reduced rate, and even tilt control would be slower and not as complete. These are the kinds of passages that are explaining that the invention is not limited to merely an absolute hermetic seal that prevents every single molecule of fluid from flowing. So, Your Honor, I'd like to move on to the three means plus function terms, unless you have any more questions about this issue. These three means plus function terms all exist in claim one? No, Your Honor. The prevent and seal terms can be found in almost every single claim of the four patents in suit. I think there's one claim in suit, perhaps, in the last patent, the 616, that I think does not have those two terms. Rather, the three means plus function limitations all exist in only the fourth patent, the 616. My question goes to just the logistics of whether or not we have to reach all three questions. I think, then, Your Honor, the answer would be yes, if I am thinking properly about the one claim that doesn't have prevent in it in the 616. Thank you. So, Your Honor, first, I think I'd like to jump to the one that was briefed last in the briefs, and that's the means for activating the suspension system. We have a slightly strange circumstance here, where what we say is the algorithm that permits that function to work is recited in both the claim and in the specification. And it's a numerical table setting forth. Right, but haven't our cases suggested or said that a table is not sufficient disclosure? No, Your Honor, I don't think so. I think the case law says that an algorithm can be disclosed in any number of ways. It can be disclosed in text, in flow charts, in formulae. And I think in this circumstance, this table discloses. What does aristocrat say? Doesn't it call out specifically that a table was just a description of the claim function and not sufficient? My memory about aristocrat, Your Honor, is that the so-called table that was in the specification was just a series of black boxes talking about functions. Whereas here we have numbers saying if the angle and the speed are x and y, then engage the invention. And that's different. The table, when I look at it, let's assume it's an algorithm, just for the purposes of my question. It seems that the table deals, it's an algorithm for dealing with the movement of the tilting. It provides different ratios that are used to keep the tilting. But the claim reads for means for activating. So on one hand, your algorithm seems to me to say, this is what's going to happen once it's activated. But your claim reads means for activating. And this algorithm doesn't do that. It's the processor that activates the suspension control system. And the way that that activation function is The processor means the computer. The computer. Where's the algorithm then that works with that process? It's programmed with the table. The specification says, here's the table to program. But where is it? Where is it in your claim? The table is verbatim recited in the claim. Are you talking about this table, that the table that deals with vehicle speed and turning angle to activate? Yes, Your Honor. I think there's a table in the claim 5. That's not an algorithm for activating. That's an algorithm for the function that occurs once activation has happened. No, Your Honor. The table is consulted by the processor before the activation occurs. It's when the conditions that occur as recited in the algorithm occur that the activation function in the processor is triggered. Unless you point for an algorithm that works with the computer, the processor, as you say, for activation purposes, unless you have an algorithm, then it seems to me you have a problem. The processor could just send the signal, say go. But the processor alone isn't enough. That's what aristocrats is all about. Exactly. The processor wouldn't know when to engage, but for being programmed with this table. With this one, show me the table. I want to make sure I'm looking at the same table. Yes, sir. So column 14 is where it appears in the claims. Which one? Is it 354 Patton? 616, Your Honor. So actually, I'm sorry, column 15 is where it is. Vehicle speed in miles per hour in one column and turning angle to activate suspension in degrees in the other column. Yes, Your Honor. Going from 120 miles an hour down to 10 miles an hour. Yes. Yes. That is your algorithm? Yes, Your Honor. The turning angle is the angle of the tires, not, for example, the steering wheel, but it's the tires of the car. And it's when those conditions. So I see that algorithm applying for controlling, not activating. Well, the processor consults those conditions and activates if they're satisfied. What conditions? Yes, yes. So if the car is traveling at 40 miles per hour and the wheels go to a 7 or 8 degree angle, then the processor says suspension system activated. The claim says means for activating said means for controlling. So you have a means for activating and a means for controlling. Yes. The table, to me, seems to be the means for controlling. So you have an algorithm, but you don't have one for activating. And I guess you're saying that this table is it. I say this is part of the means for activating, Your Honor. This is what's programmed in the processor. The means for controlling the suspension, those are all of the other elements that are in all of the other drawings of the patents. Those are the cylinders where the fluid flows or doesn't flow. And those are the means for controlling the suspension. And the processor sends a signal, for example, to the solenoid that's in the cylinder to engage, and that's what controls suspension. Well, the district court found means for activating. It didn't address the means for controlling. Not, anyway, not with respect to this issue that we're talking about. Right. And so he said. You're saying that the district court erred in its means plus function limitation means for activating. Yes, Your Honor. So setting aside the controlling, this table is the only algorithm that you have with respect to for activating? Yes, Your Honor. This table would tell the processor when to activate the means for controlling the suspension. The means for controlling the suspension is separate, and we disagree with the judge on that as well, because he seemed to believe that control necessarily means a dictatorial control of every single aspect. And that's inconsistent with all of the portions of the specification saying that cushioning or limiting is sufficient. OK. And we're out of time, Your Honor. Yeah. Why don't you reserve the remainder, and let's hear from the other side. Good morning. So you're splitting time, so we're going to start your clock at 13 minutes. Thank you, Your Honor. May it please the court. When the descriptions in the specifications of the invention and the statements made during prosecution are so consistently and so unambiguously linked to one claim construction result, as they do in this case for the sealing and prevent terms, minor differences in the wording of the claims cannot change that outcome. And that proposition applies in this case, whether you want to call it claim differentiation or not. Well, what's minor to you may not be minor to everyone. I mean, why isn't it probative, at least, that you've got one claim that says prevent flow, and you've got one that says prevent any flow, that that shouldn't at least give us some clue that preventing flow does not necessarily mean any flow? For several reasons, Your Honor. Number one, the construction that would result from that view would be inconsistent with numerous statements, we find, that describe the invention as preventing, as stopping the flow. Yeah, but he's got one section of the specification that suggests that it doesn't prevent all. I disagree with that, because the section that CloudFarm points to describes the shock-absorbing function. And no doubt, there are descriptions in these patents, in all of the patents, that describe that the device can be used as a shock absorber when the vehicle does not tilt sufficiently to activate the tilt-sensing means, that is, that mercury switch mounted at the bottom of the car. But once the vehicle tilts beyond a predetermined degree to activate those sensing means, then the seal is closed, and the fluid flow is stopped. And the patents explain that functionality for every single embodiment in all the patents. Why don't you take us back to how they prevent any flow that got into the claim? Yes. So during prosecution of the 354 patent, the first patent, the applicant described in what became Claim 16, the sealing means as preventing any substantial flow. In response to a rejection, an indefiniteness rejection, the applicant struck the word substantial for the claim to read, prevent any flow. Now, what Cloud Pharma seems to be arguing, that by that amendment, they turned the system of Claim 16 from a system that only reduced fluid flow to a system that stopped fluid flow, and that that amendment had the opposite effect for Claim 1 and Claim 8. Well, if Claim 1 was meant to be stop any flow, and they wanted Claim 1 and Claim 16 to be consistent, then why didn't they amend Claim 16 just to say prevent flow? I think the indefinite rejection specifically related to the word substantial, so that's what they deleted. Well, so you take the word substantial out, and it just says prevent flow. And if everybody knows that prevent flow means prevent all flow, then everything is consistent. It would have been more consistent, that's true. Well, sure, but do you think there's some little daylight here? Because in amending this particular Claim 16 to say prevent any flow, they mean in 16 any flow, but in 1, they don't mean all flow. I don't think there is much daylight, because at the very same time, in the same amendment, the applicant described his invention as a whole, not with respect to any particular embodiments or any particular pending claims, as preventing any fluid flow and preventing any further tilting. And that statement in the very same amendment, as well as all the other statements from the intrinsic evidence, that chronologically flow. And we have that second statement in the record. Where is the second statement in the record? That is on the pendings page 202. Can you take us over to the means for activating issue that we were talking about with your friend? In particular, let me address the table that is at the core of the dispute. That table lists combinations of speed and angle values at which an activation signal is sent. It is part of the function of this means plus function limitation. And merely restating the function in the specification is not sufficient. The table does not describe an algorithm. It's not a step-by-step procedure to get to these results. It describes an outcome. And conceptually, it is actually very similar to the table we see in the aristocrat case. If you look at page 1335 of the aristocrat case, that case dealt with the electronic slot machines and the patent contained a table that listed combinations of symbol positions of that slot machine at which the machine would pay out a price. And this court said, this is not an algorithm. It's not a step-by-step procedure to get to this outcome. It is an outcome. And it doesn't describe an algorithm. And another point on that issue, Your Honors, is if that table was an algorithm, and we disagree with that for the reasons I stated, but if it was an algorithm, this claim limitation wouldn't be a means plus function limitation in the first place. It would have sufficient structure. Because the table appears in the claim. Because the exact same table is in the claim. However, CloudFarm always agreed with us that this is a means plus function limitation. And it's certainly too late to effectively argue the opposite at this point. Allow me to move on to the means for controlling the suspension system, which you find in Claim 5 of the 616 patent. I'd like to focus on the issue of the corresponding structure. CloudFarm mainly disputes the district court's construction of the function. Now, the district court applied the claim language verbatim. But CloudFarm says it's incorrect. But leaving that aside, we disagree with that. But leaving that aside, whether you take the function as construed by the district court or the function as construed by CloudFarm, the outcome would be the same. There is no corresponding structure. This court, in the medical instrumentation case, explained that the public is entitled to precisely know what kind of structure is covered here. And the structure must be clearly linked to the function. None of this is present in this case. And the best evidence is CloudFarm's own proposed construction of the corresponding structure. It is self-drafted. It doesn't appear in the patent. And CloudFarm is unable to point you to any section in the patent where the structure is described, succinctly described, let alone clearly linked to the function you find in the claim limitation. And your adversary has to win on each one of these points. You only have to win on one. You mean within that claim limitation? Absolutely right. Because several limitations for which there is no corresponding structure. So long as you can sustain one, the patent's invalid. He's got to overcome every single one of the objections. That's true as between the means for activating and the means for controlling, because they both appear in Claim 5 of the 616. The third means plus function limitation, the means for sensing, appears in Claim 1 of the 616 patent. So at least that, the court has to deal with in light of the invalidity. That said, the prevent and sealing terms appear in all claims but Claim 5 of the 616 patent. So allow me to finally get to the sensing means limitation of Claim 1 of the 616 patent. Here you have a clear waiver of CloudFarm's argument. In the district court, they proposed a microprocessor as the corresponding structure. In this court, they proposed a speedometer. They never brought this up in the district court. And this court's case law finding waiver plainly applies. As this court has stated in Finnegan, a party's argument should not be a moving target. And in this particular scenario, the case Triton Tech is also applicable in that case. Just like here, a party changed its position on what the corresponding structure allegedly is. One point I have to answer in response to what CloudFarm brought up in the reply brief, CloudFarm pointed to the Interactive Gift Express case as allegedly supporting its position, saying that they can point to other parts of the specification. That holding of Interactive Gift Express only applies if the position on claim construction hasn't changed. Here, the position of CloudFarm has changed. And a party may not do so on appeal. And Interactive Gift Express itself actually says as much in dicta. With that, I will conclude. Thank you very much for your time. Thank you. Thank you, Your Honor. Mark Devane, I represent the Appelli ZF stocks. We make the shock absorbers that go into the cars that are used by Mr. Rightbox Client Volkswagen of America. I just want to make a few very quick points. One, we're only defendants on three of the patents, not the 616. Having said that, they are all related. I want to briefly address the argument about claims 1 and 16 that Appellant raised. It's interesting to note that in claims 16, responding to Your Honor's point, claim 16, they're all tilt controllers for sure. But claim 16 does say prevent any flow. But interestingly, right after that, if you look on appendix page 119, it says to prevent any flow of fluid from one portion to the other portion of the chamber, and thus prevent tilting. So even though it's preventing any flow, it's preventing tilting. It doesn't say prevent any tilting. It says prevent tilting. So clearly, throughout the SPAC, when they were using the word prevent, they mean to stop. There was absolutely no question about that. There are indeed passages in the patents, we agree, that talk about a damping function. But as Mr. Reitbach correctly points out, all of those deal with the situation where we're talking about the shock absorbing function, not the tilt function. And I think the best example of that is if we look at appendix page 118 again in the 354 patent, we can see at column 5, lines 51 to 67, in which the appellant cites as indicating the shock absorbing function. But directly after that, after they talk about that, they say, as it is met with resistance, cushioning occurs. Then it goes on to say, should a tilt be encountered as a car goes around a turn, the sensor will activate the solenoid 36, which will close the seal so that there is no longer any opening in the piston assembly and lock plate. Fluid in the bottom can then no longer enter the upper chamber, and movement of the body downward is prevented. So they're very clearly distinguishing between cushioning, on the one hand, during the shock absorbing function, and preventing any further movement at all when you get to an extreme tilt. And the last point I wanted to raise is even though we are not sued on the 616 patent, they are all related patents. And if you look at appendix page, I believe it is appendix page 162 in the 616 patent, at column three, they discuss that particular invention. And there they talk about means to communicate. I'm reading at line 21 now in the 616 patent at column three. It says, means to communicate the preset maximum angle caused a sense, excuse me, sensed by the sensing means to the sealing means to reduce or prevent any further fluid flow. And likewise, it goes on to say, and thus prevent or decelerate further movement of the piston. So when they wanted to distinguish between preventing and reducing or decelerating, they knew how to say that. They're clearly distinguishing, and preventing means stop, and it doesn't mean hinder. Thank you, Your Honors. Your Honors, on the sensing means construction that was proposed by us below, it And it's a lot more than just a microprocessor. We did not say that the means for sensing was just a microprocessor. We said it was a whole bunch of other structures, including speed signal. It came out of left field when Judge Stark said that somehow there was no speed signal disclosed in the specification. We are merely pointing to the fact that there's clear disclosure of a speedometer or an RPM sensor in the paragraph directly after the rest of the structure in the specification. As for the suspension control system, again, this is in the 616, and Judge Stark construed it to basically require absolute dictatorial control. But in the field of the invention, right at the beginning of the patent, it said it's a suspension control system for suppressing vehicular rolling motion, i.e. the tendency of the vehicle to tilt when the vehicle turns a corner.  and that runs through the difficulty with a lot of these leased claim constructions. So I yield back the balance of my time. Thank you. We thank both sides in the case to submit.